UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHRISSY COWAN,

                Plaintiff,

    - against -

COSTCO WHOLESALE CORPORATION,
CONAGRA GROCERY PRODUCTS, LLC,
CONAGRA FOODS, INC., CONAGRA
FOODS SALES, LLC, CONAGRA FOODS
PACKAGED FOODS, LLC, and CONAGRA
FOODS ENTERPRISE SERVICES, INC.,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-05552 (PKC)

PAMELA K. CHEN, United States District Judge:

    Plaintiff Chrissy Cowan brings this action seeking damages arising out of an accident on January 5, 2015, during which a canister of "PAM" cooking spray (the "Product"), manufactured and sold by Defendants, allegedly exploded and injured Plaintiff.[1] Specifically, Plaintiff asserts that on May 17, 2014, she purchased two 12-ounce canisters of the Product at Costco Wholesale Corporation. (Dkt. 14 ("Am. Compl.") ¶ 19.) On January 5, 2015 at approximately 8:00 p.m., Plaintiff was cooking with the Product, which was sitting three feet away from the stove, when it "suddenly and without warning, exploded, burning plaintiff's face, hair, and hands, causing serious, significant and permanent personal injuries." (*Id.* ¶¶ 21-23.)

---

[1] The facts in this section are drawn from the allegations contained in the Amended Complaint and materials that the Court has judicially noticed. These facts are deemed to be true for the purposes of this motion. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff).

To recover for her injuries, Plaintiff brought claims in Richmond County Supreme Court for design defect (First Cause of Action), manufacturing defect (Second Cause of Action), failure to warn (Third Cause of Action), and breach of warranty (Fourth Cause of Action). On September 24, 2015, Defendants removed the action to this Court. Now, Defendants Conagra Grocery Products, LLC, Conagra Foods, Inc., Conagra Foods Sales, LLC, Conagra Foods Packaged Foods, LLC, and Conagra Foods Enterprise Services, Inc. (collectively, "Defendants") move to dismiss all causes of action, except Plaintiff's failure to warn claim.[2] For the reasons discussed below, Defendants' motion is granted with respect to Plaintiff's manufacturing defect and express warranty claims and otherwise denied.

## LEGAL STANDARD

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a 12(b)(6) motion, a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nielsen*, 746 F.3d at 62; *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 555 U.S. at 557). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570. In deciding a motion to dismiss, the Court may consider the complaint, "any document attached to the complaint,

---

[2] On April 4, 2016, Defendant Costco filed an Answer to Plaintiff's Amended Complaint. (*See* Dkt. 19.)

any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken." *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 43 (E.D.N.Y. 2014).

## DISCUSSION

### I. STRICT LIABILITY CLAIMS

#### A. Design Defect

"A design defect claim . . . is premised on a manufacturer's failure to properly design a product, which is then placed on the market despite posing inappropriate risks." *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012). In order "[t]o state a claim for strict products liability under a design defect theory, a plaintiff must allege that '(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (quoting *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001)); *Sullivan v. Aventis, Inc.*, 14-CV-2939, 2015 WL 4879112, at *7 (S.D.N.Y. Aug. 13, 2015); *Cavanagh v. Ford Motor Co.*, 13-CV-4584, 2014 WL 2048571, at *2 (E.D.N.Y. May 19, 2014).

In her Amended Complaint, Plaintiff alleges that the Product's design "was defective in that the defendants utilized extremely flammable and combustible materials and hazardous components[.]" (Am. Compl. ¶ 27.) To substantiate this claim, Plaintiff attaches a copy of the Product's Material Safety Data Sheet, which identifies the various components of the Product. (*Id.* ¶ 27; Exhibit 4.) Plaintiff also identifies six feasible alternative gases that, if used in the Product, she alleges "would have produced a safer design[.]" (*Id.* ¶ 28.) She further avers that because of the Product's defective design, the Product exploded, causing Plaintiff's injuries. (*Id.* ¶ 36.) Defendants argue that these allegations are insufficient to survive a motion to dismiss for two

3

reasons: (1) Plaintiff's proposed alternative design of the Product contains hydrocarbons, just as the Product currently does, and thus her alternative-design allegations are purely speculative and fail to demonstrate a design defect in the Product; and (2) in any event, Plaintiff's "[Amended] Complaint merely states legal conclusions." (Dkt. 23 ("Defs.' Br.") at 7.) Neither argument is persuasive.

Defendants' first argument, that Plaintiff's proposed alternative design fails to demonstrate a design defect because it includes hydrocarbons, fails for several reasons. First, at the motion to dismiss stage, the Court cannot definitively determine whether the purported hydrocarbon components, *i.e.*, petroleum gas (liquefied), propane, 2-methyl, and butane are, in fact, hydrocarbons. While Defendants ask the Court to take judicial notice of these facts based on a Wikipedia page and New York State statute, it would be completely inappropriate for the Court to do so. Regarding the Wikipedia reference, there is no way for the Court to ascertain the reliability of the underlying sources of that reference at this stage of the proceeding. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be *accurately* and readily determined from *sources whose accuracy cannot reasonably be questioned*." (emphasis added).) As for the New York State statute, even if the Court took judicial notice of the statute's inclusion of the above-listed components as hydrocarbons, this is wholly distinct from judicially noticing that these facts are scientifically true. In any event, even assuming that these components are hydrocarbons, the Court cannot find at this stage that the inclusion of these particular hydrocarbons in Plaintiff's proposed alternative design renders it speculative or non-feasible, *i.e.,* that there are no other types of hydrocarbons that could serve as a feasible alternative design. Thus, Plaintiff's Amended Complaint sufficiently alleges a design defect, which must be proved or disproved through discovery and the fact-finding process. *Ohuche*

*v. Merck & Co.*, 11 CIV. 2385, 2011 WL 2682133, at *2 (S.D.N.Y. July 7, 2011) (denying motion to dismiss where expert testimony was likely needed to "establish" that there was a safer feasible alternative and such evidence was not necessary at motion to dismiss stage).

The Court also rejects Defendant's second argument that Plaintiff's "[Amended] Complaint merely states legal conclusions." (Defs.' Br. at 7.) The Court finds that Plaintiff has sufficiently alleged facts to support her design defect claim: the Product's design poses harm because it could lead to an explosion, certain alternative designs utilizing other types of gases are available, and the alleged defect caused the Product to explode, which directly resulted in Plaintiff's injury. (*See* Am. Compl. at ¶¶ 26-28.) Such allegations are sufficient at the motion to dismiss stage. *See Sullivan*, 2015 WL 4879112, at *7 (allegations adequate for design defect claim where plaintiff asserted that mother took drug which caused birth defects in plaintiff and there were "safer alternative designs" available because allegations were "sufficient to place Defendant on notice on the nature of the Plaintiff's claims"); *Ohuche*, 2011 WL 2682133, at *2.

Defendants' reliance on three district court decisions to argue that Plaintiff's allegations are conclusory is misplaced. (*See* Defs.' Br. at 7 (citing *Cavanagh*, 2014 WL 2048571, at *3; *Reed*, 839 F. Supp. 2d at 577-78; *Am. Guar. & Liab. Ins. Co. v. Cirrus Design Corp.*, 09-CV8357, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010)). Indeed, the sufficiency of Plaintiff's allegations becomes clear when comparing Plaintiff's allegations to those in the three cases cited by Defendants. In all of those cases, the plaintiff's allegations lacked basic facts, all of which are present here. *See, e.g.*, *Cavanagh*, 2014 WL 2048571, at *1 ("The Complaint does not identify how the [product] was defectively designed, nor does the Complaint make any mention of a feasible alternative design."); *Reed*, 839 F. Supp. 2d at 577 ("[E]schewing the opportunity to plead facts identifying [the product's] design defect, the [plaintiffs] merely plead the legal conclusion

that [the product] was defective."); *id.* at 578 ("Plaintiffs' design defect claim also fails for an additional reason. Plaintiffs do not plead facts alleging the existence of a feasible alternative design that would make the product safer[.]"); *Am. Guarantee*, 2010 WL 5480775, at *3 ("In their Amended Complaint, Plaintiffs do not specify a particular design defect, nor do they make any mention of a feasible alternative design.").

In fact, *Cavanagh*, the case heavily relied on by Defendants, affirmatively supports Plaintiff's position. In addition to addressing the defendant's motion to dismiss, the district court in *Cavanagh* analyzed the plaintiffs' motion to amend the complaint, specifically finding that the plaintiffs had "corrected the pleading deficiencies" in their complaint by "(1) identifying the defective component of [the product] (*i.e.,* the stairs leading to the passenger cab); (2) identifying several other alternative designs; and (3) alleging that [the plaintiff] was injured while exiting [the passenger cab] due to the allegedly defective stairs." *Cavanagh*, 2014 WL 2048571, at *6.[3] Plaintiff has made similar allegations here, which are sufficient at this stage to allow her design defect claim to go forward. Accordingly, Defendants' motion to dismiss is denied with respect to Plaintiff's design defect claim.

### B. Manufacturing Defect

"To state a claim for manufacturing defect . . . the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of plaintiff's injury." *Williamson v. Stryker Corp.*, 12 CIV. 7083, 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013) (citing *Colon*, 199 F. Supp. 2d at 85). "Explained another way, a manufacturing defect exists when the unit in question deviates in quality and other performance

---

[3] Defendants did not address this section of the *Cavanagh* decision in their briefing.

standards from all of the other identical units." *Cavanagh*, 2014 WL 2048571, at *3 (internal quotation marks and citation omitted).

Here, Plaintiff fails to plead a manufacturing defect claim adequately because her Amended Complaint is devoid of any allegation that the Product had a manufacturing defect when compared to other "PAM" cooking sprays in the market. *See Sullivan*, 2015 WL 4879112, at *8 ("Nowhere does Plaintiff allege that the dose(s) [of the allegedly defective drug) administered to Plaintiff's mother deviated from other doses in any way."); *Cavanagh*, 2014 WL 2048571, at *3 (complaint failed to "allege that the [product] was defective as compared to other [identical products] manufactured by Defendants"); *Goldin v. Smith and Nephew, Inc.*, 12 CIV. 9217, 2013 WL 1759575, at *3 (S.D.N.Y. Apr. 24, 2013) ("[T]here is no reason at all to believe that the particular [product] used in [the plaintiff's] surgery was defective as compared to other products manufactured pursuant to the same design."); *Reed*, 839 F. Supp. 2d at 577 ("manufacturing defect claim [did] not survive pleading" where plaintiff failed to allege "how or why the [drug] ingested by [the plaintiff] differed from its design"). Rather, Plaintiff's allegations relate to canisters of "PAM" cooking spray generally, and fail to differentiate between the particular canister of "PAM" she purchased and other canisters of the Product. (*See, e.g.*, Am. Compl. ¶ 44 ("The defendants failed to adequately perform a risk analysis during the manufacturing process regarding the foreseeable use and/or misuse of its/their "PAM" cooking spray product."). In other words, although Plaintiff alleges that Defendants failed to conduct adequate heat, pressure, and/or wall thickness testing, she fails to assert that Defendants specifically did not test the product she used compared to others sold to the general public.[4]

---

[4] Plaintiff tacitly acknowledges the weakness of her manufacturing defect claim, by asserting in her opposition that the alleged errors in testing "contributed to the production of defendants' defective product." (Dkt. 22 ("Pl.'s Aff.") ¶ 24.) This is exactly the point. Nothing

On this issue, the district court's decision in *Miccio v. Conagra Foods, Inc.* is directly on point. There, the court found that the plaintiff had adequately pled a manufacturing defect claim, by alleging, *inter alia*, that the defendant "carelessly allowed the specific can of cooking spray that injured [the plaintiff] to be manufactured and distributed into the stream of commerce when it (as opposed to other [Keck's Premium Food Release] spray cans properly manufactured and distributed) was capable of exploding by simply sitting on a room temperature shelf." *Miccio v. Conagra Foods, Inc.*, 6:16-CV-006140, 2016 WL 7410785, at *3 (W.D.N.Y. Dec. 20, 2016) (internal quotation marks and citation omitted). No such allegations exist here. Thus, Plaintiff fails to sufficiently plead a manufacturing defect claim, and that claim must be dismissed.[5]

## II. NEGLIGENCE CLAIMS

Defendants also move to dismiss any negligence claims Plaintiff may be asserting. Plaintiff's Amended Complaint does not indicate whether her design and manufacturing defect claims are being brought pursuant to a strict liability or negligence theory. And in her opposition brief, despite Defendants moving for dismissal of her negligence claims, Plaintiff frames the entirety of her case in the context of strict products liability, except for a handful of sporadic references to general "negligence." (*See*, *e.g.*, Dkt. 22 at ECF 10, 11.) In any event, "[u]der New

---

Plaintiff alleges with respect to the manufacturing process is unique to the Product; rather, this allegation applies generally to all canisters of "PAM."

[5] Because the Court finds Plaintiff's manufacturing claim deficient based on her failure to allege how the Product was manufactured differently than other canisters of "PAM," it need not address Defendants' other arguments regarding Plaintiff's manufacturing defect claim. The Court notes, however, that it is not persuaded by Defendants' argument that Plaintiff's complaint is deficient as to this claim because it fails to "supply any facts regarding the manufacturing process." (Defs.' Br. at 8.) In fact, within this Circuit, courts have expressly held the opposite. *See, e.g.*, *Williamson*, 2013 WL 3833081, at *1 (refusing to "require Plaintiffs to allege specific facts about the manufacturing process" because "requi[ring] plaintiff to possess technical or scientific knowledge about the inner workings of the product . . . would contravene the notice pleading requirement of Federal Rule of Civil Procedure 8, even under the *Iqbal-Twombly* standard").

8

York law, the elements of negligence claims based on design defect [and] manufacturing defect . . . theories are the same as those under strict liability." *Miccio*, 2016 WL 7410785, at *6 (internal citations omitted); *see also Cavanagh*, 2014 WL 2048571, at *5; *Am. Guarantee*, 2010 WL 5480775, at *3 ("[C]ourts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical."); *Castaldi v. Land Rover N. Am., Inc.*, 06-CV-1008, 2007 WL 4165283, at *11 (E.D.N.Y. Nov. 21, 2007) ("The standard of fault in manufacturing defect cases is simply strict liability, regardless of whether the claim is characterized as negligence or strict liability."). Therefore, to the extent Plaintiff is alleging a design or manufacturing defect claim grounded in a negligence theory, the claims survive and fail, respectively, for the same reasons as discussed above with respect to Plaintiff's strict liability claims. *Gunn v. Hytrol Conveyor Co.*, 10-CV-00043, 2013 WL 2249241, at *8 n.16 (E.D.N.Y. May 22, 2013) (granting summary judgment as to manufacturing defect claim under strict liability and negligence theories "[b]ecause manufacturing defect claims are analyzed identically" under both theories); *id.* at *10 n.17 (granting summary judgment as to design defect claim under strict liability and negligence theories because "[u]nder New York law, design defect claims are virtually identical" under both theories").

## III.  BREACH OF WARRANTY CLAIMS

### A.  Express Warranty[6]

For a breach of express warranty claim to survive a motion to dismiss, Plaintiff must allege that "there was an affirmation of fact or promise by the seller, the natural tendency of which was

---

[6] Plaintiff does not attempt to oppose Defendants' motion to dismiss Plaintiff's express warranty claim. (Dkt. 24 ("Defs.' Reply") at 1.) Plaintiff does, however, cite the legal standard for an express warranty claim in her opposition brief and thus, out of an abundance of caution, the Court analyzes that claim herein.

9

to induce the buyer to purchase and that the warranty was relied upon to [P]laintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (internal quotation marks and citations omitted); *see Reed*, 839 F. Supp. 2d at 578 ("A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty."). "A breach of express warranty claim require[s] a plaintiff to plead some affirmative statement of fact that forms the basis of the warranty. The statement must be definite enough so that its 'natural tendency [is] ... to induce the buyer to purchase." *Becker v. Cephalon, Inc.*, 14 CIV. 3864, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015) (internal quotation marks and citations omitted) (alteration in original).

Here, Plaintiff fails to allege an express warranty claim adequately in order to survive a motion to dismiss. Nowhere in her Amended Complaint does Plaintiff assert an "affirmative statement of fact" made by Defendants that she relied upon in purchasing the Product. *Id.* at *7. Instead, Plaintiff relies on the general allegation that Defendants "expressly . . . warranted to the general public and to [Plaintiff] that their 'PAM' cooking spray was safe for the use intended." (Am. Compl. ¶ 59.)[7] Such an allegation, which does not describe how the "safe" representation was made or how Plaintiff's purchase of the Product was based on seeing that representation, falls woefully short of the pleading requirements for an express warranty claim. *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009) ("Plaintiff does not even describe how [the representation the product was 'safe'] was made. Without sufficient allegations identifying the conduct at issue, plaintiff has failed to give defendants notice of the grounds of her claim.") (citing

---

[7] At the pre-motion conference, Plaintiff suggested that in purchasing the Product, she relied upon affirmative representations made in television advertisements. The Court declines to consider this statement because Plaintiff did not allege this in her Amended Complaint nor raise the issue in her opposition brief.

New York law); *Goldin*, 2013 WL 1759575, at *6 ("Plaintiff has not alleged with sufficient specificity the requisite representation by [defendants.]"). Accordingly, Plaintiff's breach of express warranty claim must be dismissed.

### B. Implied Warranty

For a breach of implied warranty claim to survive a motion to dismiss under New York law, Plaintiff must allege the following: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." *Simon*, 990 F. Supp. 2d at 407 (internal quotation marks and citation omitted); *Cavanagh*, 2014 WL 2048571, at *5. "Liability under strict products liability and implied warranty theory are essentially the same." *Id.* at *5 (internal quotation marks and citation omitted); *Goldin*, 2013 WL 1759575, at *5. Not surprisingly, in moving to dismiss Plaintiff's implied warranty claim, Defendants make the same arguments they made in moving to dismiss the design defect claim. Because the Court finds that Plaintiff has sufficiently alleged a design defect claim, Plaintiff's implied warranty claim also survives. *See Sullivan*, 2015 WL 4879112, at *8 ("Defendant's argument as to Plaintiff's claim for breach of implied warranty is largely premised on dismissal of her claims for design defect and manufacturing defect. As the Court has found that Plaintiff's design defect claim survives, these arguments are moot.").

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted as to Plaintiff's manufacturing defect and express warranty claims and otherwise denied. Plaintiff's

manufacturing defect and express warranty claims are, therefore, dismissed. Discovery shall continue on Plaintiff's design defect, implied warranty, and failure to warn claims.[8]

                                       SO ORDERED.

                                       */s/ Pamela K. Chen*
                                       Pamela K. Chen
                                       United States District Judge

Dated: January 5, 2017
       Brooklyn, New York

---

[8] The Court denies Defendants' request for oral argument as unnecessary. (Dkt. 25.)